# SAWYER, ESTATE OF, IN RE:

Probate Court, Franklin County.

No. 122,735. Decided October 10th, 1947.

Burr, Porter, Stanley & Treffinger, Columbus, for exceptor.
W. H. Middleton, Waverly, for State of Ohio Tax Commission.

**EXCEPTIONS TO APPRAISEMENT AND DETERMINATION OF INHERITANCE TAX.**

**OPINION**

By McCLELLAND, J.

This matter comes before the Court upon the exceptions filed herein to the determination of the inheritance tax in the above named estate. The exceptor Willits H. Sawyer is the surviving spouse of the deceased, and also the administrator of her estate. The exceptions are directed to the finding of the Court that certain transfers made during the lifetime of the decedent were transfers made in contemplation of death. It is the contention of the exceptor that said transfers were not made in contemplation of death, and are therefore not taxable as such. The attorney for the exceptor has presented to the

court a memorandum, which, in our opinion, states the essential facts as far as they go. Other facts were developed at the hearing growing out of the testimony of the exceptor.

The decedent died intestate on January 1, 1947, a resident of Franklin County, Ohio, leaving as her sole and only heirs her husband, the exceptor herein, and two sons, one of whom resides in Zanesville, Ohio, and the other in New Jersey.

In considering this matter we must keep in mind the statutory provision that if property is transferred within two years prior to the death of the decedent for no consideration, or for an inadequate consideration, the presumption is that said transfer was made in contemplation of death and that the burden is upon the exceptor to produce sufficient evidence to rebut the presumption. If the transfers were made more than two years prior to the death of the decedent, the burden is upon the State of Ohio to prove that the transfers were made in contemplation of death.

We will discuss these matters in the order in which they are discussed in the memorandum of the exceptor.

First, there were five shares of A. T. & T. stock originally issued to Georgina C. Sawyer and Robert Thomas Sawyer, as joint tenants, with right of survivorship and not as tenants in common. The certificates for these shares were indorsed in blank by the deceased, and on or about December 10, 1946, were mailed by Mrs. Sawyer to her son Thomas, with a statement to the effect that this was his stock and that she wanted nothing to do with it. The stock certificates in question were issued apparently in compliance with §8623-30 GC. Sec. 8673-20 GC contains the following language:

"A certificate is endorsed when an assignment or a power of attorney to sell, assign, or transfer the certificate or the shares represented thereby is written on the certificate and signed by the person appearing by the certificate to be the owner of the shares represented thereby, or when the signature of such person is written without more upon the back of the certificate. In any of such cases a certificate is indorsed though it has not been delivered."

We had a similar situation in a question arising in the Estate of Zoa B. Gugle, Case No. 121685, in which a stock certificate was made out to the deceased or another named person, or the survivor. The certificate was indorsed in blank by the one joint tenant and delivered to the deceased. In that case we held when the certificate was indorsed and delivered

to the deceased it then lost its character of joint tenancy and became the sole property of the deceased. If we apply the same reasoning to the case at bar with reference to the A. T. & T. stock, Mrs. Sawyer, when she indorsed in blank and delivered the same to her son lost all interest in that certificate, and it therefore lost its character as a certificate owned jointly by her and her son. It became the property of the son, and at the time of her death it was not a joint certificate. Therefore, the transfer does not come within the operation of the fifth paragraph of §5332 GC, and the principle of enhancement of value will not apply. It therefore went to the son as a gift and not by contract. Inasmuch as the gift was made within two years prior to the death the burden is upon the exceptor to rebut the presumption of a gift in contemplation of death.

Mr. Sawyer the husband and administrator testified that Robert Thomas Sawyer contributed nothing to the purchase of that certificate when it was originally purchased, and therefore the entire value of the certificate passed as a gift.

The second matter discussed in the memorandum of the exceptor concerns five savings bonds listed on page one of Schedule "D" of the application for determination of inheritance tax. Those bonds were originally in the name of Georgina C. Sawyer or Edward K. Sawyer, and were given and physically turned over to her son Edward by Mrs. Sawyer at or shortly after their purchase, and from that time forward they remained in the sole custody and control of Edward K. Sawyer in his safety deposit box at Zanesville, Ohio.

Upon an examination of Schedule "D" of the application for determination of the inheritance tax, we find that one of these bonds was issued in January 1944, and others were issued during the year 1946, which, of course, were within two years prior to the death of the decedent. There is no evidence that these bonds were indorsed by Mrs. Sawyer at the time of the delivery to the son, and therefore the transaction comes within the operation of the fifth paragraph of §5332 GC. Under that section the enhanced value of the property passing to the grantee or joint owner, is taxable. There is no evidence that Edward K. Sawyer furnished any part of the consideration for any of the five bonds, and if the same are taxable they are taxable at their full value. The remainder of the bonds in that group mentioned in Schedule "D" were in a safety deposit box at the Ohio National Bank, Columbus, Ohio, at the date of the death of the decedent. They were inclosed in an envelope marked "Property of Edward K. Sawyer, Ayres

Mineral Company, Zanesville, Ohio." The testimony discloses that this was a family box to which the father and mother, and Edward K. Sawyer, the son living in New Jersey, had as free access to that box as any of the other three persons.

These bonds were made payable to Georgina K. Sawyer or Edward K. Sawyer. The possession of one was the possession of the other. Some of these bonds were issued as early as 1937. Three of this group were issued within two years prior to the date of the death of the decedent. If this group of bonds are taxable they will come within the operation of paragraph five of §5332 GC, by the terms of which the enhanced value caused by the death of one of the joint owners is subject to the inheritance tax.

The testimony discloses that Edward K. Sawyer contributed nothing to the purchase of these bonds.

We now come to the consideration of the transfer of the property to Robert Thomas Sawyer, the son living in New Jersey. Twenty certificates for twenty shares of the General Electric Common Stock were issued on March 18, 1944, to Georgina K. Sawyer or Robert Thomas Sawyer, joint tenants with right of survivorship and not as tenants in common. On December 10, 1946, five shares of A. T. & T. stock, common, were issued likewise. Although we do not have in our notes the date of delivery of these certificates to Robert Thomas Sawyer, the memorandum of the exceptor recites that they were delivered into the possession of Robert Thomas Sawyer on the dates above given. On January 1, 1944, a Treasury bond was issued in the name of Georgina K. Sawyer and Robert Thomas Sawyer, and on the same date was delivered to the possession of Robert Thomas Sawyer. The record is silent as to any indorsement made thereon by Georgina K. Sawyer.

It is to be noted that the five shares of the A. T. & T. common stock were delivered on December 10, 1946, being within two years of the date of the death of the deceased. The other two items were delivered within two years prior to her death. If they are taxable they come within the operation of the fifth paragraph of §5332 GC, by the terms of which the inhanced value is subject to tax.

The testimony discloses that Robert Thomas Sawyer contributed nothing to the purchase price of these bonds.

The testimony further discloses that five other bonds of $1000.00 each were delivered to Robert Thomas Sawyer, and were in his possession at the time of the death of his mother.

All of the other bonds issued in their joint names were in an envelope and marked "Property of Robert Thomas Sawyer, American Locomotive Company, 30 Church Street, New York City, New York." This envelope containing these bonds at the time of the decedent's death was in a safety deposit box in The Ohio National Bank, Columbus, Ohio. This was the same box which was referred to by Mr. Sawyer, the exceptor, as the family box.

The testimony discloses that all of the funds for the purchase of these bonds were furnished to the decedent by her husband Willits H. Sawyer, and was by her used in the purchase of these bonds.

The decedent at the time of her death left property which was appraised at the sum of $32,777.70. The value of the property transferred during her lifetime was of substantially the same value. As we have heretofore noted, all of the transfers made by the decedent within two years prior to her death are presumed to have been made in contemplation of death. All of those transfers made more than two years prior to the date of the death of the deceased are not governed by the same presumption. The various courts of appeal of Ohio have held that the burden in such case is upon the State of Ohio to adduce such testimony as is sufficient to rebut the presumption.

The decedent left only two children. She made a distribution of approximately the same amount to each son. The father furnished the consideration for the purchase of most of these securities. Without reviewing the facts any further, the Court is led to the conclusion that the circumstances are such as to lead this Court to believe that the decedent in making the transfers hereinbefore referred to, was making a distribution of her estate in contemplation of death. Therefore, all of the transfers are subject to tax. Those which retained their character of joint tenancy are taxable at their enhanced value, and, inasmuch as the surviving joint tenant paid no portion of the purchase price, the whole amount is taxable. We further must come to the conclusion that the transfers made within two years prior to her death also are taxable as transfers made in contemplation of death.

The exceptions are therefore overruled, and an order may be drawn accordingly.